The Chancellor.
The complainant and defendant are brothers. Their father, who died in 1835, by his will directed that .the defendant, as a condition of certain devises and bequests made to him in the will, should pay to the complainant, then a minor, on his arriving at the age of twenty-one years, the sum of one hundred dollars.
The complainant was twenty-one years of age on the 4th of December, 1844. He claims the one hundred dollars, and the interest from that date.
The defendant resists payment upon two grounds..
First. He alleges that, on the 23d of August, 1847, he, as the guardian of the complainant, by virtue of such appointment by the will of their father, had a final settlement with the complainant, and that, in consideration of two hundred and twenty-five dollars then paid him, the complainant executed a release under seal, by which he released and discharged the defendant of and from all actions, suits, demands and claims whatsoever, which the said complainant then had, ever had, or‘could have against the defendant, as his guardian.
The release does not cover this claim.
Benjamin B. Cooper, by his will, appointed one Benjamin Cooper, his cousin, and the defendant, his son, the guardians of the complainant, with directions to educate and maintain him out of the estate given to the complainant by the will. On the complainant’s arriving at the age of twenty-one years, the defendant and his sister, Sarah Ann, were to pay the complainant, out of their own estate, the sum of one hundred dollars each.
*569 The release does not embrace technically, nor in its spirit, the claim in question. There is nothing in the pleadings or proofs to show that it was the intention of the parties to the release that it should embrace any other claims between them, or claims in any other right than the legal technical construction of the instrument warrants. There is no allegation in the answer that it was the understanding or intention of the parties, or of the defendant himself, that the release should embrace this claim. The release is set up as a legal defence, and the defendant claims no benefit from it except what, upon the face of it, the strict rule of law will give him.
Second. The defendant sets up in his answer that he took the benefit of the bankrupt law, and on the 16th day of August, 1842, received his discharge from the District Court of the United States for the district of New Jersey.
It is unnecessary to decide the question discussed on the argument, whether the character of this debt is such as to exclude it from the operation of the bankrupt law. The defendant cannot avail himself of the defence unless he -proves it. This he has not done, and his answer, in this respect, cannot avail him.
The defendant must account for the one hundred dollars, and interest thereon, from the 4th of December, 1844.
The bill also prays an account of the rents and profits of certain lands and premises, in the bill described, from the 20th of March, 1847, up to the 7th of November, 1849.
The complainant and defendant, with their sister, were tenants in common of the lands in question, each entitled to one equal third part of the same.
There are three tracts of land lying adjacent to each other. On one of them is an apple orchard and several cider-mills and distilleries. The other tracts have been cultivated as farms.
All three of the tracts were occupied by tenants, under rent, for a number of years.
The distilleries, dwelling-house and other buildings had been permitted to go to decay. The fences were dilapi *570 dated, and the lands impoverished by improper cultivation. In this situation of the premises the defendant went into the jmssession of them. He rebuilt part of the dwelling-house, which had fallen down, put the cider-mills in repair, renewed the fences, and, by proper cultivation, renovated -the farming land. In the following month of March, after the defendant took possession, the sister conveyed her interest to the complainant, who thus became seized of two equal undivided third parts of the lands and premises.
On the 13th of October, 1848, the complainant and defendant agreed to a division, and for this purpose entered into writings, under seal, by which they named and appointed three persons to divide the lands by metes and bounds, according to a 'line, or division thereof, agreed upon by. the parties, and to value and appraise the respective shares, and to settle to whom, and how, the difference in the valuation of the shares should be paid. A division was made in pursuance of the agreement, and it was determined that the defendant should pay the complainant two thousand one hundred and fifty dollars on the 10th day of January then following, when the parties should mutually release to each other their respective allotments. Releases were exchanged on the 16th of March, 1849, but the defendant did not deliver up the possession of the part allotted to the complainant until the 7th of November, 1849. The complainant claims one-third of the rents from the 20th of March, 1847, the time when the defendant entered into possession, up to the 25th of July, 1848, when his sister made the conveyance to him of her interest; and from that period up to the 7th of November, 1849, he claims two-thirds of the rent.
The defendant denies that he had possession of the three tracts, but admits that he occupied the buildings and a part of the land, and he claims that the improvements made by him should be allowed him as a set-off to the rent.
I think the evidence sufficiently proves that the defendant had the possession of all the land. There is proof that he exercised a control over the whole of it, and that he de *571 dared he had the possession, and would hold it until the difficulties between himself and brother should be settled
A proper allowance should be made to the defendant for the permanent improvements put by him on the premises. It is shown that the repairs and improvements were absolutely necessary to make the buildings and premises tenant-able, and to prevent their total dilapidation. The defendant had the benefit of the improvements in the division and valuation made by the individuals who made the partition between the parties; and it is equitable, under these circumstances, that in accounting for the rents and profits, the improvements should be taken into the account. For the repair of fences, and the manure put upon the land, the defendant can have no allowance in the shape of improvements. The impoverished state of the land, and the general condition as to fences and other particulars essential to its enjoyment, will, of course, enter into the calculation in fixing an estimate of the value of the premises for the purposes for which they were adapted. The defendant is not entitled to a more liberal rule in taking the accounts, considering the circumstances of the whole case. By this mode of taking the accounts he will get a fair allowance for the manure and fences.
Let a reference be made to a master, with directions to charge the defendant with the one equal third part of the yearly rent and value of the premises from the 20th March, 1847, to the 25th July, 1848, and with two equal third parts of their yearly rent and value from the 25th July, 1848, to the 7th November, 1849. Let an allowance be made to the defendant for the one-third of the value of the permanent improvements put by him on the premises between the first-named period, and for the value of two-thirds of such improvements from the 25th of July, 1848, to the 1st of November, 1848, when the partition was made.
The decree of the Chancellor was affirmed unanimously.